516 A.2d 810

JDK Management, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued September 8, 1986, before Judges MACPHAIL and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Elizabeth Place,* with her, *Charles O. Barto, Jr.,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, October 22, 1986:

JDK Management, Inc. (Petitioner), which operates Shenandoah Manor Nursing Center (Shenandoah), appeals from the final administrative action of the Department of Public Welfare (DPW) disallowing certain depreciation and interest costs which were submitted for the purpose of calculating medical assistance reimbursements for the fiscal period ending December 31, 1982. We affirm in part and reverse in part.

The facts of this case date to 1979, when Phillip Krause undertook the task of obtaining a certificate of need (CON) for a 120-bed long term nursing care facility. Mr. Krause ultimately received approval of the CON and approached John D. Klingerman for assistance in building a nursing facility. On December 29, 1980, Valley Health Concerns, Inc. (VHC) was incorporated for the purpose of building Shenandoah. Mr. Krause agreed to transfer the CON to VHC in return for a development fee of $50,000. VHC subsequently began its search for a building contractor. The successful bidder was required to pay a construction supervision fee to Mr. Klingerman totaling $50,000. In conducting an

audit of Shenandoah for a one month period ending December 31, 1982, DPW disallowed depreciation and interest expense on capital funds borrowed to finance the CON development fee and the construction supervision fee described above. Petitioner appealed these audit adjustments.

Following a fair hearing, DPW's disallowance of the costs at issue was affirmed by the Hearing Officer who based his ruling on two theories: (1) that the $50,000 fees represented "related-party costs" and (2) that the payments constituted costs of investment by Mr. Krause and Mr. Klingerman. Petitioner's further appeal was denied by the Office of Hearings and Appeals.[1] The instant petition for review followed.

Petitioner contends that the fees at issue are not among those subject to related party treatment by DPW regulations and that they constitute allowable construction costs. In the alternative, Petitioner contends that even if the fees do constitute related party costs, they should nevertheless be allowed as reasonable compensation for services provided. Petitioner also argues that the Hearing Officer erred in concluding that the fees were properly disallowed as owners' costs of investing.

It should be noted at the outset that DPW does not dispute the fact that the supervision fee paid to Mr. Klingerman would ordinarily be allowable as a construction cost. DPW also concedes that both fees were paid for services performed and were not unreasonable in amount.

Our scope of review here is limited to a determination of whether DPW's decision is in accordance with law, whether the fact findings are supported by substantial evidence and whether any constitutional rights have

---

[1] Petitioner's request for reconsideration was also denied by the Office of Hearings and Appeals.

been violated. *Klingerman Nursing Center, Inc. v. Department of Public Welfare,* 73 Pa. Commonwealth Ct. 470, 458 A.2d 653 (1983). We are also mindful that an administrative agency's interpretation of its own regulations is controlling unless the interpretation is plainly erroneous or inconsistent with either the regulation or the statute under which it is promulgated. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980).

DPW regulations include the Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities (Manual), 8 Pa. B. 2832-38 (1978).[2] The Manual sets forth principles for determining allowable costs of nursing care facilities like Shenandoah. DPW regulations also provide that the Medicare Provider Reimbursement Manual (HIM-15) is applicable to determine allowable operating costs except where HIM-15 provisions conflict with those in the Manual. 55 Pa. Code §1181.65(d)(2).

DPW relied on HIM-15 §807 in disallowing the supervision fee paid to Mr. Klingerman. Section 807 provides as follows:

> Where an owner or other official of a provider directly receives from a vendor monetary payments or goods or services for his own personal use as a result of the Provider's purchases from the vendor, the value of such payments, goods, or services constitutes a type of refund or rebate and should be applied as a reduction of the provider's costs for goods or services purchased from the vendor.

---

[2] The current version of the Manual appears at 55 Pa. Code §§1181.201—1181.274. This version became effective on July 1, 1983 and, thus, is not applicable to the instant case since the audit here at issue involved the fiscal period ending December 31, 1982.

As noted previously, the contractor who built Shenandoah was required, as a condition of being awarded the contract, to retain Mr. Klingerman as construction supervisor for a fee of $50,000. DPW contends that HIM-15 §807 requires that this fee, while reasonable under the circumstances of the instant case, must be disallowed. DPW posits that Section 807 serves the dual role of precluding the reimbursement of kickbacks through the medical assistance program, while also limiting the costs of auditing such vendor payments for reasonableness.

We must agree that a literal reading of Section 807 supports DPW's position. Since DPW's interpretation is reasonable, it is controlling in the case *sub judice*. We, accordingly, will affirm the disallowance of the construction supervision fee.

Turning next to the CON development fee, we must agree with Petitioner that the fee cannot be properly disallowed as a "related party cost". While the current version of the Manual specifically defines and disallows certain related party costs, *see* 55 Pa. Code §1181.263, the Manual provisions in effect in December 1982 did not refer to related party costs at all.[3] Thus, if DPW's disallowance of the CON fee is to be affirmed, it must be on the theory that the fee actually constituted the cost of Mr. Krause's original investment in VHC. Petitioner acknowledges that investment costs are not allowable for purposes of reimbursement since they do not constitute costs relating to patient care. *See Mead Nursing Home v. Department of Public Welfare*, 59 Pa. Commonwealth Ct. 539, 430 A.2d 379 (1981).

---

[3] The Manual does refer to costs of "related organizations" in Section IV(D)(13). We agree with Petitioner, however, that this provision is inapplicable here where we are dealing not with organizations providing services to Shenandoah, but rather with individuals.

430

The hearing record reflects that DPW did not contest the reasonableness of the $50,000 development fee. N.T. at 8. Moreover, Mr. Krause testified that he spent approximately thirty hours per week for a year and a half working on the CON application. N.T. at 53-54. Thus, it would appear that the $50,000 fee represented a reasonable value for the transfer of the CON to VHC.

While not raised as an issue by DPW's prosecuting attorney, the Hearing Officer reasoned, however, that the $50,000 payment to Mr. Krause represented a duplication of the cost of his investment in VHC. The Hearing Officer based this conclusion on the fact that the other stockholders paid $50,000 for 10% stock ownership of VHC while Mr. Krause apparently received an 18% ownership interest plus the $50,000 fee in return for the transfer of the CON plus a $10,000 investment. We note that a pre-incorporation agreement, which details the transactions between Mr. Krause and VHC, was not made a part of the record below. Absent that agreement, we find the record inadequate to definitively support the Hearing Officer's conclusion that the $50,000 fee actually represented Mr. Krause's cost of investment. The record does adequately establish, however, that the $50,000 fee represented a reasonable payment for the value received by VHC for acquisition of the CON. We, accordingly, conclude that the Hearing Officer's disallowance of the $50,000 development fee was in error and must be reversed.

### ORDER

The order of the Department of Public Welfare denying the Petitioner's appeal from Audit Report No. 83-191 is affirmed as to that part thereof which denied Petitioner's claim of interest and depreciation costs with respect to Petitioner's transaction with J. Klingerman and reversed as to that part thereof which denied interest and depreciation costs with respect to the Petitioner's transactions with P. Krause.